MARK R. LEONARD (State Bar No. 219186)
DAVIS & LEONARD, LLP
8880 Cal Center Drive
Suite 180
Sacramento, California 95826
Telephone: (916)362-9000
Fax: (916)362-9066
E-mail: mleonard@davisandleonard.com

Attorneys for Plaintiff
Premier Pool Management Corp.

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PREMIER POOL MANAGEMENT CORP, a Nevada corporation,<br><br>Plaintiff,<br><br>v.<br><br>FRANKLIN DEAN LUSK, an individual; JASON LUSK, DBA SMARTPROSEO, an individual.<br><br>Defendants. | CASE NO.<br><br>**COMPLAINT FOR LANHAM ACT VIOLATIONS, INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AND UNFAIR COMPETITION**<br><br>JURY TRIAL DEMANDED |

## I. OVERVIEW

Through this action, plaintiff Premier Pool Management Corp. ("PPMC") brings federal and pendent state claims against defendants Franklin Dean Lusk aka Dean Lusk ("D. Lusk") and Jason Lusk ("J. Lusk") dba SmartProSEO ("SmartPro") for federal unfair competition and intentional interference with contractual relations.

## II. JURISDICTION AND VENUE

1. The jurisdiction of this court is founded on 28 U.S.C. Section 1331 (federal question) and 28 U.S.C. Section 1338 (trademark infringement), because the first and second claims arise under the Federal Lanham Act, and on 28 U.S.C. Section 1367(a) (supplemental jurisdiction), because claims three and four arise out of the same facts and are so related that they form part of the same case or controversy.

2. This Court has personal jurisdiction over Defendants D. Lusk and J. Lusk as they, through their business SmartPro, have contracted with customers in California, including PPMC in this judicial district, employ a sales agent who resides in this judicial district to secure customers for SmartPro, and have thus established sufficient minimum contacts with this district. Defendants therefore regularly do business in this district and intentionally have directed conduct that is material to the claims of this case to this district.

3. Venue is proper in this judicial district under 28 U.S.C. Section 1391(c) and in that Defendants are subject to personal jurisdiction here and the acts complained of herein took place and are taking place within this judicial district.

## III. PARTIES

4. Plaintiff Premier Pool Management Corp., is a corporation organized under the laws of the state of Nevada, with its principal headquarters and place of business located in this District in Gold River, California.

5. Defendant Franklin Dean Lusk, aka Dean Lusk., is, upon information and belief, an individual residing in Lewisville, Texas.

6. Defendant Jason Lusk, is, upon information and belief, an individual residing in Lewisville, Texas. Upon information and belief, the Lusks are brothers that operate and manage an interest search engine optimization business under the fictitious business name SmartProSEO.

7. PPMC is informed and believes that there may be additional parties that have conspired with the defendants or materially contributed to the wrongdoing alleged in this complaint. PPMC currently lacks information concerning the identity of these parties and reserves its right to amend this complaint as the identity of additional parties becomes known to PPMC.

## IV. GENERAL ALLEGATIONS

A. PPMC And Its Trademark

8. PPMC, through its licensee Premier Pool & Spa, Inc. ("PPS"), has offered swimming pool and spa construction services under the mark PREMIER POOLS & SPAS

(the "PPMC Mark") since at least as early as December 12, 1989 and in interstate commerce since at least as early as 2001. PPMC offers a full range of marketing services, including website management, creation of printed marketing materials, search engine optimization ("SEO") pay per click online ad management, and licensing of the PPMC Mark to pool construction companies throughout the United States.

9. Internet advertising is a major component of PPMC's advertising services to its licensees. PPMC, through vendors, seeks to ensure that its licensees' websites appear prominently in internet search results for pool construction companies.

10. In or about June 2006, PPS applied to register the PPMC Mark with the United States Patent and Trademark Office ("USPTO"). On or about November 2, 2006 the USPTO issued an office action refusing registration of the PPMC Mark based on an alleged conflict with a prior registration for the mark PREMIER POOLS CONSTRUCTION, INC., owned by Premier Pools Construction, Inc. (the "PPCI Mark"), a pool construction company located in Florida.

11. In or about December 2006 PPS, through its counsel, began negotiations with PPCI to obtain PPCI's consent for registration of the PPMC Mark. Those negotiations continued for several months, but were ultimately unsuccessful and PPS abandoned its trademark application in or about May 2007, but continued to offer pool and spa construction services under the PPMC Mark.

12. On or about December 27, 2007, PPCI filed a new application to register the PPCI Mark with the USPTO. On or about June 12, 2008 the USPTO cancelled the prior registration of the PPCI Mark for failure to renew the registration. On or about February 27, 2009 the USPTO issued a new registration for the PPCI Mark (the "PPCI Registration").

B. The Defendants

13. Upon information and belief, the Lusks own and operate a search engine optimization company, SmartPro, which offers SEO services to increase the ranking of its customers' websites in internet searches.

14. In or about August 2011, PPMC began searching for a new vendor to assist with its SEO services. PPMC identified SmartPro in that search and contacted SmartPro to inquire about the SEO services it could provide to PPMC. In or about mid-August 2011 SmartPro sent its sales agent, Michael Ribeiro, to meet with PPMC about SmartPro becoming a PPMC SEO vendor. Ribeiro met with PPMC's president, Paul Porter, at PPMC's offices in Gold River, California. The meeting was successful and in or about late August/early September 2011 PPMC entered into an agreement with SmartPro for SEO services.

C. Further Negotiations With PPCI.

15. On or about August 4, 2011, PPCI's president, Kevin Boissy, e-mailed PPMC's president, Paul Porter, to ask if PPMC was still interested in potentially acquiring the PPCI Registration. During a subsequent telephone conversation in August 2011, Boissy told Porter that PPCI wanted to sell the registration because Boissy was interested in winding down the business, that PPCI only built a couple of pools a year and that it only built pools in central Florida. Boissy suggested a sale price of $5,000 and asked Porter to provide a draft agreement for the assignment of the PPCI Registration. Porter accepted the offer and sent Boissy a draft agreement on about September 4, 2011.

16. In or about late September 2011, Porter received a telephone call from PPCI's attorney, Amber Davis, who told him that another party had made a higher offer for the PPCI Registration and invited Porter to increase PPMC's $5,000 offer. Porter stated that he believed he already had purchased it based on his acceptance of Boissy's earlier offer. He also told Davis he would not renegotiate the deal and declined to offer additional money, in part, because of Boissy's statement to him that PPCI only built pools in Florida, which Porter understood made the PPCI Registration invalid based on PPCI's failure to use the PPCI Mark in interstate commerce.

D. D. Lusk's Acquisition Of The PPCI Registration.

17. On or about October 18, 2011, D. Lusk telephoned PPMC's Retail Division President, Rob Carter, and asked to meet with Carter in PPMC's Chandler, Arizona office.

On or about October 20, 2011 D. Lusk arrived at the office with an associate, Hamilton Leonard, whom D. Lusk introduced to Carter as D. Lusk's "partner."

18. D. Lusk told Carter that in the course of SmartPro's work for PPMC, a PPMC licensee in Houston, Texas, Bill Unger, asked D. Lusk to research an issue Unger was having with a competitor using the phrase "Premier Pool" in many online pay per click web advertising campaigns and SEO marketing tactics. D. Lusk stated that Unger requested that SmartPro find a way to disallow this if it was against cyber-marketing rules.

19. D. Lusk explained that he began to look into the issue and wrote Google to find out what the options were. Google asked for proof of trademark ownership and so D. Lusk stated that he obtained a copy of Unger's DBA and submitted it to Google. Google responded that this would not be acceptable and need to see proof of trademark ownership.

20. D. Lusk stated that he began researching the trademark and discovered that the only national trademark registration seemed to be owned by a father/son owned pool builder in Florida and the trademark was officially named Premier Pools Construction, Inc. D. Lusk further stated to Carter that at this point, he contacted PPCI in order to investigate further. Upon speaking with PPCI, D. Lusk told Carter learned that Porter had made contact in the past and recently in order to discuss purchasing the PPCI Registration.

21. D. Lusk next stated that at this point he surmised that there was an opportunity to get involved in the bidding process, but once he heard how much it would take to acquire the trademark, he realized it was far more than he could afford. D. Lusk stated that after further research he found that there were approximately 30 companies doing business in the United States that were using some form of the phrase "Premier Pools" in their business listings. D. Lusk further explained that he discussed the situation with his brother J. Lusk, and confirmed to his satisfaction that J. Lusk could indeed "turn the lights out" on PPMC's efforts to market and advertise on the web, as well as force the discontinuation of any web site use if SmartPro obtained the PPCI Registration.

22. D. Lusk next told Carter that since he wasn't able to come up with the funds to acquire the PPCI Registration, he reached out to a former business partner, Leonard. D.

-5-

COMPLAINT FOR LANHAM ACT VIOLATIONS, INTENTIONAL INTERFERENCE WITH
CONTRACTUAL RELATIONS AND UNFAIR COMPETITION

Lusk stated that he and Leonard decided that there was an opportunity to profit by securing the PPCI Registration by forcing anyone and everyone who was using "Premier Pools" in their business listing to pay to use the trademark.

23. Leonard then chimed in and stated he purchased the PPCI Registration and listed D. Lusk as the assignee. Carter asked Leonard how much he paid for the PPCI Registration to which he replied, "at this point, I have $140,000.00 in to it". Carter then asked what he wanted in order for PPMC and its licensees to continue to use the name and he replied by saying "I want to get my investment of $140,000.00 out of it and one of several options that will allow me and Dean to have passive income on an indefinite basis."

E. Leonard's and D. Lusk's Threats To Disrupt PPMC's Business.

24. Leonard next stated that since he and D. Lusk now control the PPCI Registration, and after conferring with J. Lusk, with one letter to Google, Microsoft, Yahoo, and all web hosting companies, they could negatively impact PPMC's and all of its licensees ability to do business by convincing the search engines and hosting companies to stop PPMC from any form of internet marketing and they could get all of PPMC's websites shut down immediately.

25. Leonard then proposed three options to Carter:

Option "A" – SmartPro uses the trademark to approach all existing PPMC licensees and demand that if they wanted to continue using the Premier Pools name, each licensee would have to begin paying an annual royalty of $6,000.00 to $10,000.00.

Option "B" – SmartPro allows all current licensees to use the name, assigns the PPCI Registration to PPMC, and in turn they would police the use of the name in the United States and go after all of the other 30+ non Premier Pools licensees and force them to become a PPMC licensee, pay SmartPro a royalty of $6,000.000-$10,000.00 per month indefinitely, or cease doing business under the Premier Pools name.

Option "C" – PPMC "pays an astronomical sum to purchase the trademark" from Dean and Hamilton".

COMPLAINT FOR LANHAM ACT VIOLATIONS, INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AND UNFAIR COMPETITION

26. Carter replied that he didn't believe they could put PPMC and its licensees out of business and if that was the case, then Leonard would be out $140,000.00, SmartPro would lose its largest customer, and that possibly the other mom and pop dealers (non-Premier Pools licensees) across the country would simply change their name and this extortion attempt would be all for naught. Leonard responded very confidently that he had considered this potential outcome and was confident that PPMC would instead see how much control D. Lusk and he would have over the trademark, and have no choice but to cooperate, rather than go out of business.

27. Carter next asked D. Lusk and Leonard what would happen if PPMC didn't participate in their offer and they both indicated that they would contact PPMC's current licensees, as well as all other entities doing business with Premier Pools in their name, to become trademark licensees of theirs.

28. Carter concluded the meeting by stating that he would convey all the information and the offer to Porter and would get back to them. Carter telephoned D. Lusk on or about October 21, 2011 and told D. Lusk that PPMC would not accept the offer and would likely respond with a lawsuit for SmartPro's threats to disrupt PPMC's business.

F.     SmartPro's Efforts to Disrupt PPMC's Business

29. On or about October 24, 2011, PPMC received an e-mail from one of its web hosting vendors, Rackspace, informing PPMC that it had received a complaint from D. Lusk regarding PPMC's use of the PPMC Mark on a website hosted by Rackspace, premierpoolsaz.com. D. Lusk's complaint alleged, *inter alia*, that he was the owner of the PPCI Registration, that PPMC did not have permission from him to use the term "Premier" in connection with its licensee's pool construction services, and "immediately cease and desist any hosting services" Rackspace was providing to PPMC.

30. On or about October 26, 2011, PPMC's counsel responded to Rackspace stating that D. Lusk did not have any legitimate trademark rights in connection with the PPCI Registration and that his complaint was an attempt to harass PPMC and its licensees.

COMPLAINT FOR LANHAM ACT VIOLATIONS, INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AND UNFAIR COMPETITION

31. On or about October 27, 2011, Rackspace responded stating that if PPMC did not remove the allegedly infringing mark from its website, Rackspace would disable access to the site.

32. On or about October 29, 2011, PPMC entered into an agreement with another company to provide hosting services to PPMC's licensee's websites.

33. On or about October, 27 2011 PPMC discovered that SmartPro had placed an internet advertisement on YouTube for pool construction services in connection with the mark PREMIER POOLS AND SPAS in some markets in which PPMC licensees currently offer their services. Upon information and belief, this ad demonstrates that SmartPro is acting on D. Lusk's stated intent to offer licenses for use of the mark PREMIER POOLS AND SPAS to competitors of PPMC's licensees.

## FIRST CLAIM FOR RELIEF
(Federal Unfair Competition – against all Defendants)
(15 U.S.C. §1125(a))

34. PPMC hereby incorporates the allegations contained in paragraphs 1 through 33 above as though fully set forth herein.

35. PPMC is the owner of the mark PREMIER POOLS & SPAS, used in connection with pool and spa construction services

36. Through its licensees, PPMC has continuously used its mark in interstate commerce since at least as early as 2001.

37. As a result of PPMC's use of its mark, PREMIER POOLS & SPAS has become a valuable mark indicating the source and origin of PPMC's services.

38. Defendants' use of the PREMIER POOLS AND SPAS in internet advertising and their attempts to disrupt PPMC's advertising by falsely claiming infringement of the PPCI Registration, constitute unfair competition pursuant to 15 U.S.C. §1125(a) and is likely to cause confusion among the relevant consuming public.

39. Defendants' acts were willful and knowing, making this an exceptional case within the meaning of 15 U.S.C. §1117(a).

40. Defendants acted with malice, fraud, and oppression, in that they acted with the specific intent of taking away business from PPMC through deceptive and unfair means, entitling PPMC to recover punitive damages as set forth below.

41. For its claim for federal unfair competition, PPMC seeks relief as set forth below.

## SECOND CLAIM FOR RELIEF
### (Cancellation of U.S. Trademark Reg. No. 3,574,382)
### (15 U.S.C. §1119)

42. PPMC hereby incorporates the allegations contained in paragraphs 1 through 41 above as though fully set forth herein.

43. In its application to register the PPCI Mark, PPCI's President, Kevin Boissy, signed a declaration stating that the mark was being used in interstate commerce.

44. In his August 2011 telephone conversation with PPMC's president, Paul Porter, Boissy admitted the mark had only been used in connection with pool construction services in Central Florida.

45. Because the PPMC Mark was not used in interstate commerce, the PPMC Registration is void and subject to cancellation under 15 U.S.C. §1064.

46. For its claim for cancellation of the PPCI Registration, PPMC seeks relief as set forth below.

## THIRD CLAIM FOR RELIEF
### (Intentional Interference With Contractual Relations)

47. PPMC hereby incorporates the allegations contained in paragraphs 1 through 46 above as though fully set forth herein.

48. PPMC entered into a contract with Rackspace to provide web hosting services for one of PPMC's websites.

49. On information and belief, through SmartPro's SEO services for PPMC, Defendants were aware of the Rackspace contract.

50. Based on Defendants' threats made in the October 20, 2011 meeting with Carter and D. Lusk's October 24, 2011 complaint to Rackspace, Defendants intended to disrupt the performance of this contract.

51. Defendants' wrongful conduct caused Rackspace to threaten to terminate PPMC's web hosting services and required PPMC to obtain an alternative web hosting company, causing harm to PPMC in the form of additional expenses for obtaining web hosting services from a new company.

52. If not for Defendants' actions in falsely accusing PPMC of trademark infringement and engaging in unfair competition, the Rackspace contract would not have been disrupted.

53. For its claim for intentional interference with contractual relations, PPMC seeks relief as set forth below.

## FOURTH CLAIM FOR RELIEF
(Unfair Business Practices)
(Cal. Bus. & Prof. Code §17200 et seq.)

54. PPMC incorporates the allegations contained in paragraphs 1 through 53 above as though fully set forth herein.

55. The Defendants' actions in attempting to extort money from PPMC for use of the PPCI Registration, disruption of the Rackspace contract, and use of the mark PREMIER POOLS AND SPAS in internet advertising, copying PPMC's website are unfair business practices within the meaning of sections 17200 et seq. of the California Business & Professions Code.

56. By their unfair business practices, Defendants caused, and continue to cause, actual injury to PPMC in the form of increased costs for web hosting services.

57. As a result of the Defendants' unfair business practices, PPMC is entitled to an injunction barring the Defendants from continuing their unfair business practices.

COMPLAINT FOR LANHAM ACT VIOLATIONS, INTENTIONAL INTERFERENCE WITH
CONTRACTUAL RELATIONS AND UNFAIR COMPETITION

58. PPMC is further entitled under Business & Professions Code sections 17200 et seq. of restitution by the Defendants of anything taken from PPMC by way of their unfair business practices.

59. For its claim for violation of the California Business & Professions Code section 17200 et seq., PPMC seeks relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, PPMC demands judgment against the Defendants and relief as follows:

1. For actual damages, including PPMC's loss of business and profits, Defendants' unjust enrichment, reasonable royalty, and any additional consequential damages or loss of profits resulting from Defendants' wrongful, unlawful, and tortious acts as alleged in this Complaint, in an amount to be proved at trial but believed to significantly exceed $75,000.

2. For an Order preliminarily and permanently enjoining Defendants, and all persons acting in concert with then, temporarily and preliminarily during the pendency of this action, and permanently thereafter from unlawful disruption, or efforts to disrupt PPMC's and its licensees' businesses in any way.

3. For punitive or exemplary damages as permitted by law in an amount necessary to punish or deter Defendants.

4. That, with respect to PPMC's claim under the Lanham Act, 15 U.S.C. §1125(a), PPMC be awarded Defendants' profits and damages to PPMC in an amount to be proved at trial.

5. That, with respect to PPMC's claim under the Lanham Act, 15 U.S.C. §1119, the PPCI Registration be cancelled.

6. That, with respect to PPMC's claims under the Lanham Act, pursuant to 15 U.S.C. §1117(b), PPMC recover three times its damages.

COMPLAINT FOR LANHAM ACT VIOLATIONS, INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AND UNFAIR COMPETITION

7. That with respect to PPMC's claim for intentional interference with contractual relations, PPMC recover all its costs associated with securing a new web hosting company.

8. For attorneys' fees and costs to the extent otherwise allowed by law or by contract, including pursuant to 15 U.S.C. §1117(a).

9. For restitution under Cal. Bus. & Professions Code §17200 et seq. of anything that Defendants have taken from PPMC as a result of their unfair business practices.

10. For such other and further relief as the Court may deem proper.

Dated: November 1, 2011            DAVIS & LEONARD, LLP


                                   /s/Mark R. Leonard
                                   Mark R. Leonard
                                   Attorney for Plaintiff
                                   Premier Pool Management Corp.