MARK R. LEONARD (State Bar No. 219186)
DAVIS & LEONARD, LLP
8880 Cal Center Drive, Suite 180
Sacramento, California 95826
Telephone: (916) 362-9000
Fax: (916) 362-9066
E-mail: mleonard@davisandleonard.com

Attorneys for Plaintiff
Premier Pool Management Corp.

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PREMIER POOL MANAGEMENT CORP, a Nevada corporation,<br><br>    Plaintiff,<br><br>v.<br><br>FRANKLIN DEAN LUSK, an individual; JASON LUSK, DBA SMARTPROSEO, an individual.<br><br>    Defendants. | CASE NO. 2:11−CV−02896−GEB −CKD<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>**Hearing:**<br>Date: April 30, 2012<br>Time: 9:00 a.m.<br>Courtroom: 10 |

I. INTRODUCTION

Plaintiff Premier Pool Management Corp. ("PPMC") moves for entry of a default judgment including cancellation of a federal trademark registration. an award of fees and costs, and injunctive relief against Defendant Franklin Dean Lusk ("D. Lusk"). D. Lusk fraudulently obtained a trademark registration, extorted PPMC by threatening to disrupt its business if it did not pay D. Lusk for use of the registration, and, when PPMC refused, acted on his threats to disrupt PPMC's business. D. Lusk has been fully aware of this case and its status for almost four months, having both been properly served and from receiving a copy of the complaint from his prior attorney. Despite this fact, so far he has failed to

file an answer or otherwise respond to plaintiff's complaint. Entry of a default judgment is therefore warranted.

## II. FACTS

### A. PPMC's Business and Trademark.

PPMC, through its licensee Premier Pool & Spa, Inc. ("PPS"), has offered swimming pool and spa construction services under the mark PREMIER POOLS & SPAS (the "PPMC Mark") since at least as early as December 12, 1989 and in interstate commerce since at least as early as 2001. Declaration of Paul Porter ("Porter Decl.") ¶3 PPMC offers a full range of marketing services, including website management, creation of printed marketing materials, search engine optimization ("SEO") pay per click online ad management, and licensing of the PPMC Mark to pool construction companies throughout the United States. *Id*. Internet advertising is a major component of PPMC's advertising services to its licensees. *Id*. PPMC, through vendors, seeks to ensure that its licensees' websites appear prominently in internet search results for pool construction companies. *Id*.

In or about June 2006, PPS applied to register the PPMC Mark with the United States Patent and Trademark Office ("USPTO"). Declaration of Mark R. Leonard ("Leonard Decl.") ¶2. On or about November 2, 2006 the USPTO issued an office action refusing registration of the PPMC Mark based on an alleged conflict with a prior registration for the mark PREMIER POOLS CONSTRUCTION, INC., owned by Premier Pools Construction, Inc. (the "PPCI Mark"), a pool construction company located in Florida. *Id*. PPS's attorney engaged in negotiations with PPCI to obtain PPCI's consent for registration of the PPMC Mark, but those negotiations were unsuccessful. Leonard Decl. ¶3.

After the negotiations concluded, PPS's attorney continued to monitor PPCI's registration and found through USPTO records that on or about December 27, 2007, PPCI filed a new application to register the PPCI Mark with the USPTO. *Id*. On or about June 12, 2008 the USPTO cancelled the prior registration of the PPCI Mark for failure to renew

2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

the registration. *Id*. On or about February 27, 2009 the USPTO issued a new registration for the PPCI Mark, Registration No. 3,574,382 (the "PPCI Registration").

### B. PPMC's Negotiations for the PPCI Registration.

In or about August 2011, PPMC began searching for a new vendor to assist with its SEO services. Porter Decl. ¶7. PPMC identified a company called SmartPro in that search and contacted SmartPro to inquire about the SEO services it could provide to PPMC. *Id*. In or about mid-August 2011 SmartPro sent its sales agent, Michael Ribeiro, to meet with PPMC about SmartPro becoming a PPMC SEO vendor. *Id*. The meeting was successful and in or about late August/early September 2011 PPMC entered into an agreement with SmartPro for SEO services. *Id*. D. Lusk worked closely with Porter and PPMC's Retail Division President, Rob Carter, regarding SmartPro's SEO services for PPMC and its licensees. Porter Decl. ¶; Declaration of Rob Carter ("Carter Decl.") ¶3.

On or about August 4, 2011, PPCI's president, Kevin Boissy, sent Porter an email to ask if PPMC was still interested in potentially acquiring the PPCI Registration. Porter Decl. ¶7. During a subsequent telephone conversation in August 2011, Boissy told Porter that PPCI wanted to sell the registration because Boissy was interested in winding down the business, that PPCI only built a couple of pools a year and that it only built pools in central Florida. *Id*. Boissy suggested a sale price of $5,000 and asked PPMC to provide a draft agreement for the assignment of the PPCI Registration. *Id*. PPMC accepted the offer and sent Boissy a draft agreement on about September 4, 2011. *Id*.

In or about late September 2011, Porter received a telephone call from Amber Davis, who informed him that she was PPCI's attorney. Porter Decl. ¶8. During that call she told Porter that another party had made a higher offer for the PPCI Registration and invited him to increase PPMC's $5,000 offer. *Id*. Porter told her that he believed PPMC had already purchased it based on his acceptance of Boissy's earlier offer. *Id*. Porter also told her he would not renegotiate the deal and declined to offer additional money. *Id*.

### C. D. Lusk's Acquisition Of The PPCI Registration.

On or about October 18, 2011 Carter received a telephone call from D. Lusk. Carter Decl. ¶3. D. Lusk asked to meet with Carter at PPMC's Chandler, Arizona office. *Id*. On or about October 20, 2011 D. Lusk arrived at the office with an associate, Hamilton Leonard ("H. Leonard"), whom D. Lusk introduced to Carter as D. Lusk's "partner." *Id*.

At that meeting D. Lusk told Carter that in the course of SmartPro's work for PPMC a PPMC licensee in Houston, Texas asked D. Lusk to research an issue he was having with a competitor using the phrase "Premier Pool" in many online pay per click web advertising campaigns and SEO marketing tactics. Carter Decl. ¶4. D. Lusk stated that he began researching the issue and discovered that the only national trademark registration was owned by PPCI and that he contacted PPCI in order to investigate further. Carter Decl. ¶7. Upon speaking with PPCI, D. Lusk told Carter that he learned that Porter had made contact in the past and recently in order to discuss purchasing the PPCI Registration. *Id*.

D. Lusk next told Carter that at this point he surmised that there was an opportunity to get involved in the bidding process. Carter Decl. ¶8. D. Lusk stated that after further research he found that there were approximately 30 companies doing business in the United States that were using some form of the phrase "Premier Pools" in their business listings. *Id*. D. Lusk further explained that he discussed the situation with his brother Jason Lusk ("J. Lusk") and confirmed to his satisfaction that J. Lusk could "turn the lights out" on PPMC's efforts to market and advertise on the web, as well as force the discontinuation of any web site use if SmartPro obtained the PPCI Registration. *Id*.

D.     D. Lusk's Threats To Disrupt PPMC's Business.

H. Leonard then chimed in and stated he purchased the PPCI Registration and listed D. Lusk as the assignee. Carter Decl. ¶10. Carter asked what he wanted in order for PPMC and its licensees to continue to use the name and he replied by saying "I want to get my investment of $140,000.00 out of it and one of several options that will allow me and Dean to have passive income on an indefinite basis." *Id*.

H. Leonard next told Carter that since he and D. Lusk now controlled the PPCI Registration, and after conferring with J. Lusk, with one letter to Google, Microsoft, Yahoo, and all web hosting companies, they could negatively impact PPMC's and all of its licensees' ability to do business by convincing the search engines and hosting companies to stop PPMC from any form of internet marketing and they could get all of PPMC's websites shut down immediately. Carter Decl. ¶11. H. Leonard then proposed three options to Carter:

> Option "A" – SmartPro uses the trademark to approach all existing PPMC licensees and demand that if they wanted to continue using the Premier Pools name, each licensee would have to begin paying an annual royalty of $6,000.00 to $10,000.00. Carter Decl. ¶12.

> Option "B" – SmartPro allows all current licensees to use the name, assigns the PPCI Registration to PPMC, and in turn they would police the use of the name in the United States and go after all of the other 30+ non Premier Pools licensees and force them to become a PPMC licensee, pay SmartPro a royalty of $6,000.000-$10,000.00 per month indefinitely, or cease doing business under the Premier Pools name. *Id*.

> Option "C" – PPMC "pays an astronomical sum to purchase the trademark" from D. Lusk and H. Leonard. *Id*.

Carter replied that he didn't believe they could put PPMC and its licensees out of business and if that was the case, then H. Leonard would be out $140,000.00, SmartPro would lose its largest customer, and that possibly the other mom and pop dealers (non-Premier Pools licensees) across the country would simply change their name and this extortion attempt would be all for naught. Carter Decl. ¶13. H. Leonard responded very confidently that he had considered this potential outcome and was confident that PPMC would instead see how much control D. Lusk and he would have over the trademark, and have no choice but to cooperate, rather than go out of business. *Id*.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

Carter next asked D. Lusk and H. Leonard what would happen if PPMC didn't participate in their offer and they stated that they would contact PPMC's current licensees, as well as all other entities doing business with Premier Pools in their name, to become trademark licensees of theirs. Carter Decl. ¶14. Carter concluded the meeting by stating that he would convey all the information and the offer to Porter and would get back to them. Carter Decl. ¶14. Carter telephoned D. Lusk on or about October 21, 2011 and told him that PPMC would not accept the offer and would likely respond with a lawsuit for SmartPro's threats to disrupt PPMC's business. *Id.*

E. D. Lusk's Disruption of PPMC's Business.

On or about October 24, 2011, PPMC received a notification from one of its web hosting vendors, Rackspace, informing PPMC that it had received a complaint from D. Lusk regarding PPMC's use of the PPMC Mark on a website hosted by Rackspace, premierpoolsaz.com. Porter Decl. ¶9; Carter Decl. Ex. A. D. Lusk's complaint claimed that he was the owner of the PPCI Registration, that PPMC did not have permission from him to use the term "Premier" in connection with its licensee's pool construction services, and to "immediately cease and desist any hosting services" Rackspace was providing to PPMC. Carter Decl. Ex. A.

PPMC's counsel responded to Rackspace stating that D. Lusk did not have any legitimate trademark rights in connection with the PPCI Registration and that his complaint was an attempt to harass PPMC and its licensees. Leonard Decl. ¶3. On or about October 27, 2011, Rackspace responded to PPMC's counsel stating that if PPMC did not remove the allegedly infringing mark from its website, Rackspace would disable access to the site. *Id.* In order to ensure its services would not be disrupted, on or about October 29, 2011, PPMC entered into an agreement with another company to provide hosting services to PPMC's licensee's websites. Porter Decl. ¶10.

After preparing and filing the complaint in this action, PPMC's counsel emailed a letter, which included a copy of the complaint, to the attorney D. Lusk used to record the assignment of the PPCI Registration. Leonard Decl. ¶5. That attorney replied stating that

while he handled the assignment for D. Lusk he was not representing him in any other matter and would forward the letter and the complaint to the email address he had for D. Lusk. *Id*. As indicated on the proof of service filed with the Court on January 27, 2012, D. Lusk was served on January 12, 2012. As of the date of this motion, PPMC's counsel has not received any communication from D. Lusk nor any attorney representing D. Lusk regarding a response to the complaint in this action or an extension of time to respond to the complaint. Leonard Decl. ¶7.

III. ARGUMENT

    A. Legal Standard for Default Judgment.

Under Federal Rule of Civil Procedure 55(b), a court may order default judgment following the entry of default by the clerk of the court. The Ninth Circuit has enumerated the following factors ("the Eitel factors") that a court may consider in determining whether to grant default judgment: (1) the merits of the plaintiffs substantive claim; (2) the sufficiency of the complaint; (3) the sum of money at stake in the action; (4) the possibility of prejudice to the plaintiff; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy favoring decision on the merits. *See Eitel v. McCool*, 782 F .2d 1470, 1471-1472 (9th Cir. 1986). "In applying this discretionary standard, default judgments are more often granted than denied*." Donndelinger v. Schmidt* 2009 WL 506859, 2 (S.D. Cal. 2009) (quoting *Philip Morris USA v. Castworld Prods, Inc.* 219 F.R.D. 494, 498 (C.D. 2003)).

Upon entry of default, the well-pleaded allegations of the complaint relating to a defendants' liability are taken as true, with the exception of allegations regarding the amount of damages. *See Televideo Sys., Inc. v. Heidenthal*, 826 F .2d 915, 917-918 (9th Cir. 1987). A "judgment by default shall not be different in kind from or exceed in amount that prayed for in the [complaint]." *See* Fed.R.Civ.P. Rule 54(c). In that regard, D. Lusk's default herein serves as an admission of PPMC's well-pled allegations of fact in the complaint. *Geddes v. United Financial Group*, 559 F. 2d 557, 560 (9th Cir. 1977). Here

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

PPMC's Complaint seeks cancellation of the PPCI Registration, injunctive relief, actual damages, exemplary damages, and attorney's fees.

B. PPMC Has Meritorious Claims of Federal Unfair Competition, Cancellation of the PPCI Trademark Registration and State Unfair Competition.

PPMC has pleaded claims of unfair competition under the federal Lanham Act, cancellation of the PPCI Registration, along with state law claims of intentional interference with contract and unfair business practices. For purposes of this motion, it is sufficient that the pleading allegations and proof demonstrate the legitimacy of PPMC's federal claims, state unfair competition claim and entitlement to this relief.

1. Federal Unfair Competition.

As applied to the facts in this case, the elements of an unfair competition claim under 15 U.S.C. 1125(a) are: (1) a false statement of fact by the defendant related to its own service; (2) the statement actually deceived or has the tendency to deceive its audience; (3) the deception is material, (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been injured as a result of the false statement. *See e.g. Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, (9th Cir. 1997).

There is no question that the PPMC's complaint and proof establish a prima facie case for unfair competition. D. Lusk's complaint to PPMC's hosting company, Rackspace, contained numerous false statements, *e.g.* that D. Lusk had prior rights in the PPCI Mark, that PPMC was intentionally diverting traffic from D. Lusk's business, and PPMC was infringing the PPCI Registration. All of those statements were false because he has no pool construction business and no legitimate rights in the PPCI Mark. Those statements actually deceived Rackspace as it acted on them when it insisted PPMC cease use of its mark on the website. The false statements were material because D. Lusk had no legitimate rights in the PPCI Mark and those statement were the basis for the complaint to Rackspace. The statement was made in interstate commerce as it was emailed to

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

Rackspace. Finally, PPMC was injured because it had to incur the costs of moving its websites to a new hosting company. PPMC therefore has a presumptively valid claim for federal unfair competition.

    2. Cancellation of the PPCI Registration.

A person or entity that believes it may be damaged by a trademark registration may seek to cancel that registration. 15 U.S.C. §1064. "In any action involving a registered mark the court may…order the cancelation of registrations." 15 U.S.C. §1119. Use of a mark solely in intrastate commerce is a ground on which to seek cancellation. *See e.g. Community of Roquefort v. Santo,* 443 F.2d 1196, 170 U.S.P.Q. 205 (C.C.P.A. 1971).

  PPMC has been damaged by the PPCI Registration based on it having to move to a new website hosting company after D. Lusk's fraudulent complaint to Rackspace. PPMC has therefore established standing to seek cancellation of the PPCI Registration. The prior owner of the PPCI Registration stated his business was limited to building pools in Central Florida. He thus admitted that his use was purely intrastate and the registration should not have issued. D. Lusk isn't using the PPCI Registration in connection with any business – he is using the registration to try to extort money from PPMC and disrupt its business. PPMC has therefore established a sufficient ground for cancellation of the PPCI Registration. A default judgment is therefore warranted under Rule 55(b) because PPMC's claims are presumptively meritorious.

    3. State Unfair Competition.

Section 17200 defines unfair competition as "any unlawful, unfair, or fraudulent business act or practice." See Cal. Bus. & Prof. Code § 17200. An act is "unlawful" under section 17200 if it violates an underlying state or federal statute or common law. *See Cal–Tech Communications, Inc. v. Los Angeles Cellular Tel. Co*., 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999). PPMC has pled intentional interference with contractual relations which requires (1) that PPMC had a valid and existing contract; (2) that D. Lusk had knowledge of the contract and intended to induce their breach; (3) that the contract was in fact breached; (4) that the breach was caused by D. Lusk's wrongful

conduct; and (5) that PPMC suffered damage. *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1442 (9th Cir. 1990).

PPMC's state unfair competition claim is established both by D. Lusk's violation of 15 U.S.C. 1125(a) as well as his interference with PPMC's contract with Rackspace. PPMC had a valid contract with Rackspace at the time of D. Lusk's complaint. By virtue of his filing the complaint he knew that Rackspace was providing hosting services to PPMC. Based on the complaint itself and his threats to Rob Carter D. Lusk also clearly intended to induce the breach. The contract was breached and PPMC was damaged as PPMC had to switch to a new hosting company and the breach was caused by D. Lusk's fraudulent complaint. This violation of common law therefore supports a second basis for PPMC's state unfair competition claim.

PPMC's claims are thus meritorious and are well supported by the pleadings in the complaint, which are further buttressed by the declarations of PPMC's witnesses filed herewith. These *Eitel* factors therefore strongly favor PPMC and entry of default judgment.

C. The Other *Eitel* Factors Favoring A Default Judgment Are Present As Well.

The sum of money at stake is not large, PPMC seeks only its attorney fees and costs. There is also no possibility dispute over the material facts given PPMC's evidentiary support for its claims and D. Lusk's failure to challenge those facts. *See e.g. BR North 223, LLC v. Glieberman*, 2012 WL 639500 *8 (E.D. Cal. 2012) (no possibility of dispute over material facts that would preclude default judgment where plaintiff's claims were supported and defendant failed to appear in order to challenge such claims). D. Lusk's default is not the result of excusable neglect. His prior attorney forwarded him a copy of the complaint nearly four months ago and he has been properly served. Even so, he has refused to appear or defend himself, despite having had a full opportunity to do so. This factor weighs in favor of a default judgment.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

While cases "should be decided upon their merits whenever reasonably possible [t]he fact that Rule 55(b) has been enacted, however, indicates that 'this preference, standing alone, is not dispositive.'" *BR North 223, LLC*, 2012 WL 639500 *8 (citations omitted) (defendant's failure to respond to plaintiff's claims did not preclude the entry of default judgment against it as a decision on the merits was not possible). This is a case involving ongoing injury to PPMC without justification and one in which, because of the nature of the trademark interests involved, strongly warrants injunctive relief. Since PPMC cannot obtain a decision on the merits due to D. Lusk's failure to respond to the complaint, this factor also favors a default judgment.

D. Plaintiff Is Entitled To Injunctive Relief Against The Defendant.

Federal district courts "have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable…to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C. §1116(a). Injunctive relief also is a common, and often preferred, remedy in trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement. *See Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).

PPMC seeks permanent injunctive relief in its complaint. Complaint p. 11 ¶2. In this case a broad order enjoining D. Lusk from engaging in any further interference with PPMC's, and its licensees', business is appropriate.

E. An Award of Attorney's Fees And Costs Is Justified.

The Lanham Act authorizes an award of fees and costs. Section 1117(a) provides that a plaintiff shall be entitled to recover the costs of the action and gives the Court discretion to award reasonable attorney's fees in "exceptional cases." 15 USC § 1117(a). The term "exceptional case" is generally accepted to mean cases in which the violation is "deliberate and willful." *See Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400,1409 (9th Cir. 1993). A case may also be deemed "exceptional", and merit an award of attorney's fees under the Lanham Act, when a defendant disregards the proceedings and does not appear.

*Taylor Made Golf Co., Inc. v. Carsten Sports Ltd.*, 175 FRD 658 (SD Cal. 1997) (quoting *Lien v. Compusoft of Kalamazoo, Inc.*, 1991 WL 641575, *5 (WD Mich 1991) (defendant's "lack of cooperation and disrespect for the judicial process constitutes exceptional circumstances warranting an award of attorney's fees to plaintiff in this action. ")).

PPMC seeks its attorneys fees and costs of suit under Section 1117(a) in its complaint. Complaint p. 12 ¶8. D. Lusk's unfair competition has been clearly been knowing and willful, and his refusal to answer in this case has forced PPMC to make this motion. Under the Lanham Act, an award of attorney's fees is appropriate and warranted. PPMC therefore requests that it recover attorney's fees incurred to date in the same of $10,440 and costs in the sum of $1754.87.

IV. CONCLUSION.

For the foregoing reasons, PPMC requests entry of a default judgment in its favor in the amount and form requested in its notice of motion and in this brief and the proposed order and judgment thereon.

Dated: March 14, 2012          DAVIS & LEONARD LLP

/s/Mark R. Leonard
Mark R. Leonard
Attorneys for Plaintiff
Premier Pool Management Corp.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT