MARK R. LEONARD (State Bar No. 219186)
DAVIS & LEONARD, LLP
8880 Cal Center Drive
Suite 180
Sacramento, California 95826
Telephone: (916) 362-9000
Fax: (916) 362-9066
E-mail: mleonard@davisandleonard.com

Attorneys for Plaintiff
Premier Pool Management Corp.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PREMIER POOL MANAGEMENT CORP, a Nevada corporation,<br><br>    Plaintiff,<br><br>v.<br><br>FRANKLIN DEAN LUSK, an individual; JASON LUSK, DBA SMARTPROSEO, an individual.<br><br>    Defendants. | CASE NO. 2:11−CV−02896−GEB −CKD<br><br>**DECLARATION OF ROB CARTER IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |

I, Rob Carter, declare as follows:

1. I am the Retail Division President of Premier Pool Management Corp. ("PPMC"), the Plaintiff in this action. I make this declaration in support of PPMC's motion for default against Defendant Franklin Dean Lusk ("D. Lusk"). I have personal knowledge of the facts stated in this declaration and if called as a witness could and would competently testify thereto.

2. I have served as PPMC's Retail Division President since August 2011. As President, my duties are to oversee all aspects of PPMC's retail division and to ensure that we continue to strategically and profitably grow our licensing business, including marketing, business development, and support all licensees relating to launching and

-1-

developing their retail programs. Prior to this position I served as President and CEO of Premier Backyard Services, Inc. ("PBSI") from November 2008 until August 2011. My duties at PBSI were to negotiate all vendor contracts and oversee all aspects of sales and marketing, including daily management of all sales and marketing personnel. PBSI is a current licensee of PPMC.

3. In the course of SmartPro's work for PPMC I communicated with defendant D. Lusk regularly, generally three to six times per week, regarding all aspects of SmartPro's SEO services for PPMC and its licensee, including SEO and pay per click strategies, email blasts, and overall marketing. During none of my conversations with D. Lusk did he say that he, nor any company associated with him, was ever involved in the pool construction business. I have never heard from any other source that D. Lusk, nor any company associated with him, was previously or currently involved in the pool construction business.

4. On or about October 18, 2011, D. Lusk telephoned me and asked to meet with me in PPMC's Chandler, Arizona office. On or about October 20, 2011 D. Lusk arrived at the office with an associate, Hamilton Leonard ("H. Leonard"), whom D. Lusk introduced to me as D. Lusk's "partner."

5. D. Lusk told me that in the course of SmartPro's work for PPMC, a PPMC licensee in Houston, Texas, Bill Unger, asked D. Lusk to research an issue Unger was having with a competitor using the phrase "Premier Pool" in many online pay per click web advertising campaigns and SEO marketing tactics. D. Lusk stated that Unger requested that SmartPro find a way to disallow this if it was against cyber-marketing rules.

6. D. Lusk told me that he began to look into the issue and wrote Google to find out what the options were. He told me Google asked for proof of trademark ownership and so he obtained a copy of Unger's DBA and submitted it to Google. Google responded that this would not be acceptable and need to see proof of trademark ownership.

7. D. Lusk stated that he began researching the trademark and discovered that the only national trademark registration seemed to be owned by a father/son owned pool

DECLARATION OF ROB CARTER ISO MOTION FOR DEFAULT JUDGMENT

builder in Florida and the trademark was officially named Premier Pools Construction, Inc. D. Lusk further told me that at this point, he contacted PPCI in order to investigate further. Upon speaking with PPCI, D. Lusk told Carter learned that PPMC's CEO, Paul Porter, had made contact in the past and recently in order to discuss purchasing the PPCI Registration.

8. D. Lusk next stated that at this point he surmised that there was an opportunity to get involved in the bidding process, but once he heard how much it would take to acquire the trademark, he realized it was far more than he could afford. D. Lusk stated that after further research he found that there were approximately 30 companies doing business in the United States that were using some form of the phrase "Premier Pools" in their business listings. D. Lusk further explained that he discussed the situation with his brother Jason Lusk ("J. Lusk") and confirmed to his satisfaction that J. Lusk could "turn the lights out" on PPMC's efforts to market and advertise on the web, as well as force the discontinuation of any web site use if SmartPro obtained the PPCI Registration.

9. D. Lusk next told me that since he wasn't able to come up with the funds to acquire the PPCI Registration, he reached out to a former business partner, H. Leonard. D. Lusk stated that he and H. Leonard decided that there was an opportunity to profit by securing the PPCI Registration by forcing anyone and everyone who was using "Premier Pools" in their business listing to pay to use the trademark.

10. H. Leonard then chimed in and stated he purchased the PPCI Registration and listed D. Lusk as the assignee. Carter asked H. Leonard how much he paid for the PPCI Registration to which he replied, "at this point, I have $140,000.00 into it". I then asked what he wanted in order for PPMC and its licensees to continue to use the name and he replied by saying "I want to get my investment of $140,000.00 out of it and one of several options that will allow me and Dean to have passive income on an indefinite basis."

11. H. Leonard next stated that since he and D. Lusk now control the PPCI Registration, and after conferring with J. Lusk, with one letter to Google, Microsoft, Yahoo, and all web hosting companies, they could negatively impact PPMC's and all of its

DECLARATION OF ROB CARTER ISO MOTION FOR DEFAULT JUDGMENT

licensees ability to do business by convincing the search engines and hosting companies to stop PPMC from any form of internet marketing and they could get all of PPMC's websites shut down immediately.

12. H. Leonard then proposed three options to me:

Option "A" – SmartPro uses the trademark to approach all existing PPMC licensees and demand that if they wanted to continue using the Premier Pools name, each licensee would have to begin paying an annual royalty of $6,000.00 to $10,000.00.

Option "B" – SmartPro allows all current licensees to use the name, assigns the PPCI Registration to PPMC, and in turn they would police the use of the name in the United States and go after all of the other 30+ non Premier Pools licensees and force them to become a PPMC licensee, pay SmartPro a royalty of $6,000.000-$10,000.00 per month indefinitely, or cease doing business under the Premier Pools name.

Option "C" – PPMC "pays an astronomical sum to purchase the trademark" from D. Lusk and H. Leonard.

13. I replied that I didn't believe they could put PPMC and its licensees out of business and if that was the case, then H. Leonard would be out $140,000.00, SmartPro would lose its largest customer, and that possibly the other mom and pop dealers (non-Premier Pools licensees) across the country would simply change their name and this extortion attempt would be all for naught. H. Leonard responded very confidently that he had considered this potential outcome and was confident that PPMC would instead see how much control D. Lusk and he would have over the trademark, and have no choice but to cooperate, rather than go out of business.

14. I next asked D. Lusk and H. Leonard what would happen if PPMC didn't participate in their offer and they both indicated that they would contact PPMC's current licensees, as well as all other entities doing business with Premier Pools in their name, to become trademark licensees of theirs.

DECLARATION OF ROB CARTER ISO MOTION FOR DEFAULT JUDGMENT

15. I concluded the meeting by stating that I would convey all the information and the offer to Porter and would get back to them. I telephoned D. Lusk on or about October 21, 2011 and told him that PPMC would not accept the offer and would likely respond with a lawsuit for SmartPro's threats to disrupt PPMC's business.

16. On or about October 24, 2011, I received a notification from one of PPMC's web hosting vendors, Rackspace, informing PPMC that it had received a complaint from D. Lusk regarding PPMC's use of the PPMC Mark on a website hosted by Rackspace, premierpoolsaz.com. A true and correct copy of the email I received is attached hereto as Exhibit A.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on March 14, 2012 in PHOENIX, Arizona.

*[signature]*
Rob Carter

-5-

DECLARATION OF ROB CARTER ISO MOTION FOR DEFAULT JUDGMENT

EXHIBIT "A"

# Mark Leonard

| | |
|---|---|
| **From:** | Rob Carter [rcarter@ppas.com] |
| **Sent:** | Wednesday, March 07, 2012 1:50 PM |
| **To:** | Mark Leonard |
| **Subject:** | FW: Trademark |

Mark,

Here is the email you requested.

Rob Carter
Premier Pools & Spas
Mobile: 440.679.0208
Email: rcarter@ppas.com
Web: www.ppas.com

---

**From:** Rob Carter [mailto:rcarter@ppas.com]
**Sent:** Monday, October 24, 2011 8:51 AM
**To:** 'Paul Porter'
**Subject:** Trademark

Paul,

See below…

Rob Carter
Premier Pools & Spas
Mobile: 440.679.0208
Email: rcarter@ppas.com
Web: www.ppas.com

```
Hello,


We have received a complaint alleging that you are infringing on the
complainant?s trademark rights.  A copy of the complaint is attached hereto.

We have established the following procedure for handling trademark infringement
complaints where our customers appear as respondents:
(1)     Upon receipt of a complaint, we will forward it to you.
(2)     If you agree to take down or otherwise disable access to the allegedly
infringing content, we will notify the complainant. If you do not agree to so,
we will require that the complainant furnish us with the following information:
a)      Federal trademark registration numbers the complainant relies on for his
rights in the trademark(s) at issue. The trademark(s) must be registered on the
principal register and registrations must be issued and active (not pending,
not expired, cancelled, or abandoned).
b)      The owner of the furnished trademark registrations as it appears on
record with the USPTO. The name of the complainant must appear as the
registrant of record.
```

c)    The complainant must submit a statement attesting that, to the best of his knowledge, you do not have any implied or express permission from the complainant or his authorized parties to use the mark(s) nor do you make fair use of the mark(s).

In the event the complainant is unwilling or unable to supply the information, as outlined above, we will not provide assistance.

(3)    If the complainant is able to satisfy the above information requirements, we will advise you that the complainant?s asserted rights appear valid and serve you with a 10-day takedown notice. In the event of non-compliance within the 10-day period, and absent any legal process served by you on Rackspace, precluding Rackspace from carrying out the takedown, Rackspace will be required to proceed with disabling access to the allegedly infringing content.

Please be advised that in the event Rackspace has to comply with the takedown demands, and you believe that the complaint is unsubstantiated, Rackspace recommends that you consult with your attorney regarding options relieving Rackspace of such responsibility.

Thank you for your attention to this matter.

Kindest Regards,
Renee Graves
Rackspace AUP

--------------------------------------------------------------------------------------------------------------------------------------------------------------

I am the owner of U.S. Trademark Registration No. 3,574,382 for the trademark PREMIER POOLS CONSTRUCTION, INC.  It has come to our attention that you are hosting a web site using the URL premierpoolsaz.com on which your customer is using a trademark, trade name or web page content which incorporates the term ?PREMIER POOLS.?  This use creates a likelihood of confusion with our rights in the trademark ?PREMIER POOLS CONSTRUCTION, INC.?

        You should carefully note that we are contacting you as a web host which provides hosting services to infringers who display web content which infringes our trademark rights.  Web hosting companies may incur liability for contributory trademark infringement by hosting web sites on which trademark infringement occurs.  (See Roger Cleveland Golf Co., Inc. v. Prince (D.S.C. Mar. 14, 2011).  Your receipt of this letter is proof that you are on notice of such trademark infringement.

Further, use of the term ?PREMIER POOLS? on the Internet in domain names, meta tags and website content results in intentionally diverting internet traffic from our website and the website of our licensees. Such use also serves to wrongly create initial interest in the competing goods your customer sells and services your customer advertises on a website you support by providing hosting services. By hosting your customer?s website you are contributing to your customer improperly benefitting from the goodwill developed by use of the term PREMIER POOLS in the mark of U.S. Registration No. 3,574,382.

We demand that you immediately cease and desist any hosting services to the customer using the URL premierpoolsaz.com by which you enable infringing use of trademarks or trade names incorporating the term ?PREMIER POOLS,? and other use by the customer of the term in any advertising, social media web pages, video web sites (for example: www.youtube.com), domain names, metatags and HTML code which may divert internet traffic from our licensees, and any uses which infringe our trademark rights.

We look forward to your reply on or before 10-26-11, with written assurances that you have discontinued your contributory trademark infringement by providing hosting services which contribute to infringement our trademark rights by hosting the URL premierpoolsaz.com.

Sincerely,
Dean Lusk