IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PREMIER POOL MANAGEMENT CORP.,

        Plaintiff,                   No. CIV S-11-2896 GEB CKD

   vs.

FRANKLIN DEAN LUSK et al.,          FINDINGS AND RECOMMENDATIONS

        Defendants.

_____/

        Presently pending before the court is plaintiff's motion for default judgment.[1] (Dkt. No. 12.) The motion was previously submitted on the record without oral argument. Upon review of the papers in support of the motion, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

BACKGROUND[2]

        Plaintiff Premier Pool Management Corp. ("PPMC"), through its licensee Premier Pool & Spa, Inc. ("PPS") has offered swimming pool and spa construction services under the

---

[1] This action is before the undersigned pursuant to E.D. Cal. L.R. 302(c)(19) and 28 U.S.C. § 636(b)(1).

[2] These background facts are taken from plaintiff's complaint and the declarations submitted in support of plaintiff's motion for default judgment. (Dkt. Nos. 1, 12-2, 12-3, 12-4, 19.)

1

1  mark PREMIER POOLS & SPAS (the "PPMC Mark") since December 12, 1989 and in
2  interstate commerce since at least 2001.  (See Complaint, Dkt. No. 1 ["Compl."] ¶ 8.)  PPMC
3  itself offers a full range of marketing services, including website management, creation of printed
4  marketing materials, search engine optimization ("SEO") pay per click online ad management,
5  and licensing of the PPMC Mark to pool construction companies throughout the United States.
6  (Compl. ¶ 8.)  According to PPMC, internet advertising is a major component of its advertising
7  services to its licensees – PPMC, through vendors, seeks to ensure that its licensees' websites
8  appear prominently in internet search results for pool construction companies.  (Compl. ¶ 9.)

9         Around June 2006, PPS applied to register the PPMC Mark with the United States
10 Patent and Trademark Office ("USPTO"), but was refused registration based on an alleged
11 conflict with a prior registration for the mark PREMIER POOLS CONSTRUCTION, INC. (the
12 "PPCI Mark") owned by Premier Pools Construction, Inc. ("PPCI"), a Florida pool construction
13 company.  (Compl. ¶ 10.)  Negotiations with PPCI to obtain PPCI's consent for registration of
14 the PPMC Mark proved unsuccessful, and PPS abandoned its trademark application around May
15 2007, but continued to offer pool and spa construction services under the PPMC Mark.  (Compl.
16 ¶ 11.)

17         On December 27, 2007, PPCI filed a new application to register the PPCI Mark
18 with USPTO and on June 12, 2008, the USPTO cancelled the prior registration of the PPCI Mark
19 for failure to renew the registration.  (Compl. ¶ 12.)  On February 27, 2009, the USPTO issued a
20 new registration for the PPCI Mark – U.S. Trademark Reg. No. 3,574,382.  (Compl. ¶ 12.)

21         Around August 2011, PPMC began searching for a new vendor to assist with its
22 SEO services.  (Compl. ¶ 14.)  Thereafter, in late August/early September 2011, PPMC entered
23 into an agreement with a company named SmartPro for SEO services.  (Compl. ¶ 14.)  SmartPro
24 is owned, operated, and managed by two brothers, defendants Franklin Dean Lusk and Jason
25 Lusk.  (Compl. ¶¶ 5-6, 13.)
26 \\\

1         Around this same time, on August 4, 2011, PPCI's president, Kevin Boissy,
2 contacted PPMC's president, Paul Porter, to inquire whether PPMC was still interested in
3 acquiring the PPCI Mark registration. (Compl. ¶ 15.)  Mr. Boissy indicated that PPCI wanted to
4 sell the registration, because Boissy was interested in winding down the business, PPCI only built
5 a couple of pools a year, and it only built pools in central Florida. (Compl. ¶ 15.)  After Boissy
6 suggested a sale price of $5,000, Porter accepted the offer and sent Boissy a draft agreement for
7 the assignment around September 4, 2011 as agreed. (Compl. ¶ 15.)  However, later that month,
8 PPCI's attorney notified Porter that another party had made a higher offer for the PPCI Mark
9 registration and invited Porter to increase PPMC's $5,000 offer. (Compl. ¶ 16.)  Porter refused,
10 stating that he believed that he had already purchased it based on his acceptance of Boissy's
11 earlier offer. (Compl. ¶ 16.)  He also stated additional money was not warranted because of
12 Boissy's statement to him that PPCI only built pools in Florida, which Porter understood made
13 the PPCI Mark registration invalid based on PPCI's failure to use the PPCI Mark in interstate
14 commerce. (Compl. ¶ 16.)

15         Subsequently, on October 18, 2011, defendant Dean Lusk requested to meet with
16 PPMC's Retail Division President, Rob Carter. (Compl. ¶ 17.)  Carter met with defendant Dean
17 Lusk and his "partner," Hamilton Leonard, on October 20, 2011. (Compl. ¶ 17.)  At the meeting,
18 defendant Dean Lusk explained to Carter that, in the course of SmartPro's work for PPMC, he
19 discovered that the only national trademark registration related to the words "Premier Pools" was
20 owned by PPCI. (Compl. ¶¶ 18-20.)  Upon speaking with PPCI, defendant Dean Lusk had also
21 learned of Porter's past efforts to purchase the PPCI Mark registration. (Compl. ¶ 20.)  Further
22 research revealed that there were approximately 30 companies doing business in the United
23 States that were using some form of the phrase "Premier Pools" in their business listings.
24 (Compl. ¶ 21.)  Defendant Dean Lusk discussed the situation with his brother, defendant Jason
25 Lusk, who confirmed that they could "turn the lights out" on PPMC's efforts to market and
26 advertise on the web, as well as force the discontinuation of any website use if SmartPro obtained

the PPCI Mark registration. (Compl. ¶ 21.)

Defendant Dean Lusk told Carter that although he did not have the funding to purchase the registration on his own, he and Leonard decided that there was "an opportunity to profit by securing the PPCI Mark registration by forcing anyone and everyone who was using "Premier Pools" in their business listing to pay to use the trademark." (Compl. ¶ 22.) Leonard then informed Carter that he had in fact purchased the PPCI Mark registration for $140,000 and listed defendant Dean Lusk as the assignee. (Compl. ¶ 23.) Leonard stated that "with one letter to Google, Microsoft, Yahoo, and all web hosting companies, they could negatively impact PPMC's and all of its licensees [sic] ability to do business by convincing search engines and hosting companies to stop PPMC from any form of internet marketing and they could get all of PPMC's websites shut down immediately." (Compl. ¶ 24.)

When Carter asked what they wanted to allow PPMC and its licensees to continue to use their names, Leonard replied: "I want to get my investment of $140,000.00 out of it and one of several options that will allow me and Dean to have passive income on an indefinite basis." (Compl. ¶ 23.) Leonard then proposed three options to Carter:

> Option "A" - SmartPro uses the trademark to approach all existing PPMC licensees and demand that if they wanted to continue using the Premier Pools name, each licensee would have to begin paying an annual royalty of $6,000.00 to $10,000.00.
> Option "B" - SmartPro allows all current licensees to use the name, assigns the PPCI Registration to PPMC, and in turn they would police the use of the name in the United States and go after all of the other 30+ non Premier Pools licensees and force them to become a PPMC licensee, pay SmartPro a royalty of $6,000.00-$10,000.00 per month indefinitely, or cease doing business under the Premier Pools name.
> Option "C" - PPMC "pays an astronomical sum to purchase the trademark from Dean and Hamilton."

(Compl. ¶ 25.) Defendant Dean Lusk and Leonard further indicated that if PPMC did not participate in their offer, they would contact PPMC's current licensees, as well as all other entities doing business with Premier Pools in their name, to become trademark licensees of theirs. (Compl. ¶ 27.) Carter conveyed the above information and offer to Porter, and on

4

October 21, 2011, Carter informed defendant Dean Lusk that PPMC would not accept the offer. (Compl. ¶ 28.)

Thereafter, on October 24, 2011, PPMC received an e-mail from one of its web hosting vendors, Rackspace, informing PPMC that it had received a complaint from defendant Dean Lusk regarding PPMC's use of the PPMC Mark on a website hosted by Rackspace. (Compl. ¶ 29.) The complaint alleged that defendant Dean Lusk was the owner of the PPCI Mark registration, that PPMC did not have permission to use the term "Premier" in connection with its licensee's pool construction services, and that Rackspace should immediately cease and desist any hosting services provided to PPMC. (Compl. ¶ 29.) On October, 26, 2011, PPMC's counsel responded stating that defendant Dean Lusk did not have any legitimate trademark rights in connection with the PPCI Mark registration and that his complaint was an attempt to harass PPMC and its licensees. (Compl. ¶ 30.) Nevertheless, when Rackspace indicated that it would disable access to the site if the allegedly infringing mark was not removed, PPMC was compelled to enter into a new agreement with another company to provide hosting services to PPMC's licensees' websites, resulting in additional expenses. (Compl. ¶¶ 31-32, 51.)

Additionally, on October 27, 2011, PPMC discovered that SmartPro had placed an internet advertisement on YouTube for pool construction services in connection with the mark PREMIER POOLS AND SPAS, i.e. the PPMC Mark, in some markets in which PPMC licensees currently offer their services. (Compl. ¶ 33.) According to PPMC, this advertisement demonstrates that SmartPro is acting on defendant Dean Lusk's stated intent to offer licenses for use of the PPMC Mark to competitors of PPMC's licensees. (Compl. ¶ 33.)

BRIEF PROCEDURAL HISTORY

On November 2, 2011, plaintiff PPMC filed the instant action against defendants Franklin Dean Lusk and Jason Lusk d/b/a SmartProSEO, containing causes of action for: (1) federal unfair competition under 15 U.S.C. § 1125(a); (2) cancellation of trademark registration under 15 U.S.C. § 1119; (3) intentional interference with contractual relations; and (4) unfair

5

business practices under Cal. Bus. & Prof. Code § 17200 et seq. (Dkt. No. 1.)[3] A declaration of service filed with the court demonstrates that defendant Dean Lusk was properly served with process on January 12, 2012 by substituted service pursuant to Fed. R. Civ. P. 4(e)(1) and Cal. Civ. Proc. Code § 415.20(b), under which service was effective on the 10th day after the January 12, 2012 mailing, i.e. on January 22, 2012. (Dkt. No. 6.) PPMC's counsel also sent a copy of the complaint to the attorney defendant Dean Lusk had previously retained to handle the assignment of the PPCI Mark. (Dkt. No. 12-3, ¶ 5, Ex. B.) The attorney replied stating that, although he had handled the assignment, he was not representing defendant Dean Lusk in any other matter, but would forward the complaint to the last known e-mail address he had for defendant Dean Lusk. (Dkt. No. 12-3, ¶ 5, Ex. C.)

When defendant Dean Lusk failed to respond to the complaint within the required time, PPMC filed a request for entry of default on February 17, 2012. (Dkt. No. 9.) That same day, PPMC also dismissed its claims against defendant Jason Lusk without prejudice pursuant to Fed. R. Civ. P. 41(a). (Dkt. No. 8.) On February 21, 2012, the clerk entered defendant Dean Lusk's default. (Dkt. No. 10.) Subsequently, on March 14, 2012, PPMC filed the instant motion for default judgment against defendant Dean Lusk. (Dkt. No. 12.) The motion seeks a default judgment awarding injunctive relief, costs, and attorneys' fees. No response to the motion has been filed.

DISCUSSION

Pursuant to Fed. R. Civ. P. 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans., 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir.

---

[3] This court has subject matter jurisdiction over the action pursuant to 28 U.S.C. §§ 1331, 1338, and has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

1986)); see Fed. R. Civ. P. 55(b) (governing the entry of default judgments). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court may consider the following factors:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. Id. at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); see also Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). Although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Huynh, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law" (citation and quotation marks omitted); Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim."). A party's default conclusively establishes that party's liability, although it does not establish the amount of damages. Geddes, 559 F.2d at 560.

\\\

\\\


A. **Appropriateness of the Entry of Default Judgment Under the *Eitel* Factors**

    1. Factor One: Possibility of Prejudice to Plaintiff

The first factor set forth by the Ninth Circuit in Eitel considers whether the plaintiff would suffer prejudice if default judgment is not entered, and whether such potential prejudice to the plaintiff militates in favor of granting a default judgment. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Here, PPMC would face prejudice if the court did not enter a default judgment because PPMC would be without another recourse to enjoin the challenged conduct. Accordingly, the first Eitel factor favors the entry of default judgment.

    2. Factors Two and Three: The Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint

The court considers the merits of PPMC's substantive claims and the sufficiency of the complaint together because of the relatedness of the two inquiries. In particular, the court must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at 1175.

*First Cause of Action for Federal Unfair Competition*

15 U.S.C. § 1125(a) provides as follows:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation or origin, false or misleading description of fact, or false or misleading representation of fact, which - (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

\\\

Here, PPMC alleged that it is the owner of the PPMC Mark; that, through its licensees, it has continuously used the PPMC Mark in interstate commerce since at least 2001; and that the PPMC Mark has become a valuable mark indicating the source and origin of PPMC's services. (Compl. ¶¶ 35-37.) As discussed below, PPMC also adequately alleged that the PPCI Mark registration assigned to defendant Dean Lusk is void and subject to cancellation. (Compl. ¶ 45.) PPMC further alleged that defendant Dean Lusk's use of the PPMC Mark in internet advertising and his attempts to disrupt PPMC's advertising by falsely claiming infringement of the PPCI Registration constitute unfair competition pursuant to 15 U.S.C. § 1125(a) and are likely to cause confusion among the relevant consuming public. (Compl. ¶ 38.) Additionally, PPMC alleges that defendant Dean Lusk's acts were willful and knowing, and the court finds that allegation to be supported by the other facts pled in the complaint. (Compl. ¶ 39.)

Based on the above allegations, the court finds that the complaint sufficiently states a claim for federal unfair competition under 15 U.S.C. § 1125(a).

*Second Cause of Action for Cancellation of Trademark Registration*

A person who believes that he is or will be damaged by the registration of a trademark may seek to cancel that registration. 15 U.S.C. § 1064. Under 15 U.S.C. § 1119, a court may order cancellation of a trademark registration in whole or in part. To be eligible for registration under the Lanham Act, a trademark must be used in interstate commerce. 15 U.S.C. § 1051.[4] "The registration of a mark that does not meet the use requirement is void ab initio."

---

[4] More specifically, the Lanham Act requires that a trademark be "used in commerce" to be registered. 15 U.S.C. § 1051. "The term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce – (1) on goods when –(A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and (B) the goods are sold or transported in commerce, and (2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person

Quia Corp v. Mattel, Inc., 2011 WL 2749576, at *10 (N.D. Cal. Jul. 14, 2011); see also Aycock Eng'g, Inc. v. Airflite, Inc., 560 F.3d 1350, 1357 (Fed. Cir. 2009).

In this case, PPMC alleged that PPCI's President, Kevin Boissy, as part of the application to register the PPCI Mark, signed a declaration stating that the mark was being used in interstate commerce. (Compl. ¶ 43.) However, in his August 2011 conversation with PPMC's president, Paul Porter, Boissy admitted that the PPCI Mark had only been used in connection with pool construction services in Central Florida. (Compl. ¶ 44.) As such, PPMC has adequately alleged that the PPCI Mark was not used in interstate commerce and that its registration is void and subject to cancellation. (Compl. ¶ 45.) The court also finds that PPMC has standing to seek cancellation, because it has sufficiently alleged, as outlined above, that defendant Dean Lusk is using the void registration as a weapon to interfere with and disrupt PPMC's business. PPMC has already been damaged by defendant Dean Lusk's complaint to Rackspace based on the void registration, resulting in PPMC having to find a new website hosting company at additional expense. (Compl. ¶¶ 29-32, 51.)

Therefore, the court finds that PPMC has established its claim for cancellation of trademark registration pursuant to 15 U.S.C. § 1119.

*Third Cause of Action for Intentional Interference With Contractual Relations*

To establish a claim of intentional interference with contractual relations under California law, a plaintiff must show that (1) it had a valid and existing contract; (2) that the defendant had knowledge of this contract and intended to induce its breach; (3) that the contract was in fact breached; (4) that the breach was caused by the defendant's wrongful conduct; and

\\\

---

rendering the services is engaged in commerce in connection with the services." 15 U.S.C. § 1127. In turn, "[t]he word 'commerce' means all commerce which may lawfully be regulated by Congress." Id.

(5) that the plaintiff suffered damages.  Robi v. Five Platters, Inc., 918 F.2d 1439, 1442 (9th Cir. 1990).

   Here, PPMC alleged that it contracted with Rackspace to provide web hosting services, and that through SmartPro's SEO services for PPMC, defendant Dean Lusk was aware of the Rackspace contract.  (Compl. ¶¶ 48-49.)  Furthermore, based on the threats made at the October 20, 2011 meeting with Mr. Carter and defendant Dean Lusk's October 24, 2011 complaint to Rackspace, defendant Dean Lusk intended to disrupt performance of the contract with Rackspace.  (Compl. ¶ 50.)  PPMC further alleges that defendant Dean Lusk's actions caused Rackspace to threaten to terminate web hosting services to PPMC, requiring PPMC to enter into a new agreement with another company to provide such services and resulting in additional expenses.  (Compl. ¶¶ 51-52.)

   In light of the above allegations, the court finds that PPMC has sufficiently stated a claim for intentional interference with contractual relations.

<p align="center">*Fourth Cause of Action for Unfair Business Practices*</p>

   Cal. Bus. & Prof. Code § 17200 defines unfair competition as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising...."  "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable."  Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999).  Thus, the court finds that PPMC's unfair business practices claim under Cal. Bus. & Prof. Code § 17200 is clearly established by the predicate claims for federal unfair competition pursuant to 15 U.S.C. § 1125(a) and intentional interference with contractual relations discussed above.

   Therefore, because the allegations in the complaint are sufficient to state the above-mentioned claims, the second and third Eitel factors favor the entry of default judgment.

\\\

        3.       <u>Factor Four: The Sum of Money at Stake in the Action</u>

Under the fourth factor cited in <u>Eitel</u>, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1176. In its motion for default judgment, PPMC is not seeking monetary damages, but only injunctive relief along with costs and attorneys' fees. Moreover, the facts alleged, taken as true, show that defendant Dean Lusk's conduct was intentional and egregious. Accordingly, this factor favors granting default judgment.

        4.       <u>Factor Five: The Possibility of a Dispute Concerning Material Facts</u>

The fifth factor under <u>Eitel</u> "considers the possibility of dispute as to any material facts in the case." <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1177. "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." <u>Televideo Systems, Inc.</u>, 826 F.2d at 917-18. Moreover, PPMC has provided the court with well-pleaded allegations supporting its claims. Accordingly, no genuine dispute of material facts would preclude granting the motion.

        5.       <u>Factor Six: Whether the Default Was Due to Excusable Neglect</u>

Upon review of the record, the court finds that the default was not the result of excusable neglect. See <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1177. Defendant Dean Lusk was properly served with process. PPMC also apparently sent a copy of the complaint to his former attorney, who agreed to forward the complaint to defendant Dean Lusk. Despite ample notice of this lawsuit, defendant Dean Lusk has not appeared to date. Thus, the record suggests that he has chosen not to defend this action, and not that the default resulted from any excusable neglect. Accordingly, this <u>Eitel</u> factor favors the entry of a default judgment.

        6.       <u>Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits</u>

"Cases should be decided upon their merits whenever reasonably possible." <u>Eitel</u>,

782 F.2d at 1472. "However, the mere existence of Fed. R. Civ. P. 55(b) indicates that this preference, standing alone, is not dispositive." PepsiCo, Inc., 238 F. Supp. 2d at 1177. Defendant Dean Lusk's failure to answer the complaint precludes a decision on the merits. Although the undersigned is cognizant of the policy in favor of decisions on the merits, and consistent with existing policy would prefer that this case be resolved on the merits, that policy does not, by itself, preclude entry of default judgment. Id.

Upon consideration of the Eitel factors, the court finds that plaintiff PPMC is entitled to the entry of default judgment against defendant Dean Lusk and will make a recommendation to that effect. What remains is the determination of the injunctive relief, costs, and attorneys' fees to which PPMC is entitled.

      B.     Terms of the Judgment to be Entered

In its motion for default judgment, PPMC requests injunctive relief against defendant Dean Lusk, costs, and attorneys' fees. The relief sought was requested in the complaint. (Compl. at 11-12.)[5]

Injunctive Relief

Federal district courts "shall have power to grant injunctions, according to principles of equity and upon such terms as the court may deem reasonable, to prevent...a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C. § 1116(a); see also Century 21 Real Estate Corp., 846 F.2d at 1180 ("Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by defendant's continuing infringement.").

PPMC essentially seeks to enjoin defendant Dean Lusk, and those acting in concert or active participation with him, from interfering with PPMC's business and its use of the PPMC Mark. PPMC has demonstrated that defendant Dean Lusk's actions and threats have

---

[5] The complaint also seeks monetary damages and punitive damages (Compl. at 11-12), but upon default, PPMC is only seeking injunctive relief, costs, and attorneys' fees.

caused and will continue to cause irreparable harm for which monetary damages are inadequate. Accordingly, the court finds that PPMC is entitled to entry of a permanent injunction along the terms proposed by PPMC.

<p style="text-align:center;">Attorneys' Fees</p>

Section 1117(a) gives the court discretion to award reasonable attorneys' fees in "exceptional cases." 15 U.S.C. § 1117(a). Generally, the term "exceptional cases" is accepted to mean cases in which the defendant's wrongful conduct is deliberate and willful. See Lindy Pen Co., Inc. v. Bic Pen Corp., 982 F.2d 1400, 1409 (9th Cir. 1993). "Additionally, a case may be deemed 'exceptional,' and merit an award of attorneys' fees under the Lanham Act, when Defendant disregards the proceedings and does not appear." Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 502 (C.D. Cal. 2003). Here, PPMC adequately alleged that defendant Dean Lusk's conduct was willful and knowing. (Compl. ¶ 39.) Moreover, defendant Dean Lusk has failed to appear despite having received adequate notice of this lawsuit, thereby disregarding the instant action. Therefore, the court finds that an award of attorneys' fees is appropriate.

PPMC requests an award of $10,843.00, presumably calculated under the lodestar method. See Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir. 1996) ("The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate."). The district court then evaluates whether it is necessary to adjust the "presumptively reasonable" lodestar figure on the basis of the following factors: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the

professional relationship with the client, and (12) awards in similar cases." Id. at 363-64 n.8 (citing Kerr v. Screen Guild Extras, Inc., 526 F.2d 67, 70 (9th Cir. 1975)).

The court finds PPMC's counsel's hourly rate of $290 to be reasonable, especially in light of the fact that he has been practicing as an intellectual property litigator for almost 10 years. (Dkt. No. 12-3, ¶ 7.) According to PPMC's counsel, he spent approximately 34.4 hours on the case, in addition to the small amount of time spent by his law partner and legal assistant, resulting in a total amount of $10,843 in fees. (Dkt. No. 19, ¶ 3.) The court has reviewed the billing records and finds the amount of time spent to be reasonable with the following exceptions:

(a) Counsel spent 2.5 hours on researching and drafting a request for entry of default, for which an initial draft was already done by a legal assistant. (Dkt. No. 19 at 22.) Given that a request for entry of default is largely a form filing, the court will reduce counsel's hours spent on this activity by 2 hours.

(b) On March 26 and 27, 2012, counsel spent a combined 1.8 hours on some unknown activity. (Dkt. No. 19 at 24.) The entry for that activity has been redacted. While counsel may certainly redact billing records to protect privileged information, the court cannot award fees without having at least some broad idea of what activity the time was spent on. Therefore, the court will deduct the 1.8 hours.

In sum, the court will deduct a total of 3.8 hours, i.e. $1102 [3.8 hours x $290/hour] from the attorneys' fees requested, resulting in a lodestar figure of $9,741.

Additionally, none of the Kerr factors appears to require adjustment of the lodestar figure (e.g. no contingent fee, unusual time limitations, specific undesirability of the case, etc.). Accordingly, the undersigned recommends that PPMC be awarded attorneys' fees in the amount of $9,741.

\\\

\\\

<u>Costs</u>

15 U.S.C. § 1117(a) allows a prevailing plaintiff in an action for violation of 15 U.S.C. § 1125(a) to recover its costs of the action. A court may tax as costs certain expenses specified in 28 U.S.C. § 1920, which are awarded to the prevailing party. Ordinarily, section 1920 "defines the full extent of a federal court's power to shift litigation costs absent express statutory authority." <u>Grove v. Wells Fargo Fin. Cal., Inc.</u>, 606 F.3d 577, 579 (9th Cir. 2010).

However, "attorney's fees under the Lanham Act may also include reasonable costs that the party cannot recover as the prevailing party.'" <u>Secalt S.A. v. Wuxi Shenxi Construction Machinery Co.</u>, 668 F.3d 677, 690 (9th Cir. 2012); <u>see also</u> <u>Grove</u>, 606 F.3d at 580 ("we repeatedly have allowed prevailing plaintiffs to recover non-taxable costs where statutes authorize attorney's fees awards to prevailing parties."). This is because the phrase "reasonable attorney's fees" is interpreted to include certain non-taxable litigation expenses. <u>Grove</u>, 606 F.3d at 580. However, such costs can be awarded only if it is the prevailing practice in the relevant community for attorneys to bill these costs separate from their hourly rates. <u>Id</u>.

Here, PPMC seeks the following costs: a court filing fee of $350; $500 for the investigator to locate the defendants; $881 in service fees for the multiple attempts to serve process on the defendants; and $23.87 in online research costs incurred in attempting to locate the defendants, for a total of $1,754.87. The court is satisfied that these types of costs are typically billed to clients separately from the attorney's hourly rates, and that they were in fact billed separately to PPMC in this case. PPMC has provided invoices for these costs, which the court finds reasonable. However, the court concludes that any costs attributable solely to locating and serving dismissed defendant Jason Lusk should be subtracted. Plaintiff voluntarily dismissed defendant Jason Lusk from the action and these costs are unrelated to defendant Dean Lusk, the defendant against whom default was entered.

Upon review of the invoices, it appears that $312 of the service fees (dkt. no. 19 at 11), $1 of the online research costs (dkt. no. 19 at 13), and $250 of the costs to locate

defendants (dkt. no. 19 at 8, 10), i.e. a total of $563, are related solely to defendant Jason Lusk and therefore must be subtracted from the $1,754.87 in costs sought. Accordingly, the undersigned recommends that PPMC be awarded its costs in the amount of $1191.87.

CONCLUSION

For the reasons outlined above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff Premier Pool Management Corp.'s ("PPMC") motion for default judgment (dkt. no. 12) be granted in part;

2. U.S. Registration No. 3,574,382 for the mark PREMIER POOL CONSTRUCTION, INC. be cancelled;

3. Defendant Dean Lusk, and all persons acting in concert or active participation with him, be permanently enjoined from:

   (a) directly or indirectly wrongfully interfering with PPMC and the use of its marks, including the mark PREMIER POOLS & SPAS (the "PPMC Mark");

   (b) directly or indirectly wrongfully interfering with PPMC's contractual or business relationships with its licensees or vendors;

   (c) claiming that defendant Dean Lusk is the owner of U.S. Registration No. 3,574,382;

   (d) asserting any ownership of the mark PREMIER POOL CONSTRUCTION, INC. (the "PPCI Mark"); and

   (e) making any false statements about PPMC or its ownership of the PPMC Mark;

4. PPMC be awarded costs in the amount of $1191.87;

5. PPMC be awarded attorneys' fees in the amount of $9,741.00;

6. Judgment be entered for PPMC; and

7. The Clerk of Court be directed to close this case.

1   These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven (7) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: May 3, 2012

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

CKD/5
PremierPool.2896.default.fr.wpd